**SEALED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60219-CR-Middlebrooks

18 U.S.C. § 1343
18 U.S.C. § 1349
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

v.

DOUGLAS L. BATES,

        Defendant.
_____/

FILED BY _____ D.C.

AUG 29 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## INDICTMENT

The Grand Jury charges that, at all times relevant to this Indictment:

### General Allegations

1. Rothstein, Rosenfeldt and Adler, P.A. (hereinafter referred to as "RRA") was a law firm with offices located at 401 East Las Olas Boulevard, Fort Lauderdale, Florida and elsewhere. The law firm employed approximately seventy attorneys and engaged in the practice of law involving a wide range of specialties, including labor and employment law.

2. Scott W. Rothstein (hereinafter referred to as "Rothstein") was an attorney and was the Chief Executive Officer and Chairman of RRA.

3. Defendant DOUGLAS L. BATES (hereinafter referred to as "BATES") was a partner in the Law Offices of Koppel and Bates (hereinafter referred to as "Koppel & Bates") located at 817 South University Drive, Suite 100, Plantation, Florida.

### COUNTS 1 - 3
### FRAUDULENT SETTLEMENT LETTER
(Wire Fraud, 18 U.S.C. § 1343)

1. The General Allegations Section of this Indictment are realleged and expressly incorporated herein as if set forth in full.

2. In or about 2006, two individuals (hereinafter referred to as "Clients 1 and 2") hired Rothstein and members of RRA to pursue litigation against a design consultant for a home they built in Boca Raton, Florida. Pursuant to that representation, Rothstein filed a lawsuit against the design consultant on behalf of Clients 1 and 2. Thereafter, Rothstein settled the lawsuit, without the knowledge or consent of Clients 1 and 2. As part of the settlement, Rothstein, without notifying and obtaining the consent of Clients 1 and 2, agreed that Clients 1 and 2 would pay the design consultant approximately $500,000. In order to perpetrate a fraud, Rothstein falsely informed Clients 1 and 2 that they had won their lawsuit against the design consultant and further falsely informed them that the design consultant owed Clients 1 and 2 approximately $23 million.

3. Prior to September 2009, Rothstein informed Clients 1 and 2 that he was pursuing litigation against an air conditioning contractor who had installed an air conditioning system in their vacation home in Maine.

4. Rothstein communicated with Clients 1 and 2 through e-mail communications which traveled through servers in interstate commerce concerning the lawsuits against the design consultant in Florida and against the air conditioning contractor in Maine; their alleged dispositions; and related matters, including purported collection efforts.

5. From in or about August 2009 through in or about October 2009, in Broward County in the Southern District of Florida and elsewhere, the defendant,

DOUGLAS L. BATES,

2

and Rothstein did knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing, and attempting to execute, such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain signs, writings, signals, pictures, and sounds, as more particularly described below.

### The Scheme to Defraud

6. The scheme and artifice was designed to deceive and defraud Clients 1 and 2 through the use of false and fraudulent pretenses, representations and promises concerning certain construction contracts and litigation which purportedly had occurred in connection therewith.

7. It was part of the scheme that Rothstein falsely informed Clients 1 and 2 that, in order to collect the $23 million judgment that Rothstein had purportedly won on behalf of Clients 1 and 2 from the design consultant, Clients 1 and 2 were required to post a bond totaling two and one-half times the judgment amount.

8. It was further part of the scheme that Rothstein induced Clients 1 and 2 to transfer approximately $57 million to Rothstein afer Rothstein convinced Clients 1 and 2 that the money was being used to post a bond in furtherance of collecting the purported $23 million judgment from the design consultant.

9. It was further part of the scheme that, during the time that Rothstein was collecting approximately $57 million from Clients 1 and 2, Rothstein repeatedly provided false information to Clients 1 and 2 as to the status of the litigation against the design consultant and reasons for which the judgment could not be collected.

10. It was further part of the scheme that, in order to appease and to lull Clients 1 and 2, Rothstein falsely represented to Clients 1 and 2 that he was pursuing the litigation against the air conditioning contractor in Maine, and had negotiated a favorable settlement.

11. It was further part of the scheme that, in or about September 2009, Rothstein solicited BATES to pose as counsel for the air conditioning contractor in Maine whom Rothstein claimed to have filed a lawsuit against on behalf of Clients 1 and 2.

12. It was further part of the scheme that, in or about September 2009, Rothstein forwarded to BATES an e-mail requesting that BATES create a fraudulent and fictitious settlement letter purporting to show that the air conditioning contractor in Maine had agreed to settle the alleged pending litigation by agreeing to pay $590,000 to Clients 1 and 2.

13. It was further part of the scheme that BATES caused the fraudulent and fictitious settlement letter to be drafted on the letterhead of Koppel & Bates, and that BATES signed on behalf of the air conditioning contractor in Maine purporting to resolve the non-existent litigation in favor of Clients 1 and 2.

14. It was further part of the scheme that BATES, at the request of Rothstein, caused the fraudulent and fictitious settlement letter to be backdated to August 12, 2009.

15. It was further a part of the scheme that BATES caused the fraudulent and fictitious settlement letter to be forwarded to Rothstein, who then forwarded it to Clients 1 and 2 by electronic mail on or about September 29, 2009.

16. It was further part of the scheme that BATES did not represent the air conditioning contractor in Maine, that no such litigation was ever instituted, and that the settlement letter was fraudulent and fictitious in its entirety.

The Wire Communications

17. For the purpose of executing the aforesaid scheme, BATES transmitted and caused to be transmitted certain wire communications in interstate commerce, on or about the date enumerated, as more particularly described below:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| 1 | September 8, 2009 | Email sent from llstory@koppelandbates.com to Scott Rothstein |
| 2 | September 9, 2009 | Email sent from llstory@koppelandbates.com to Scott Rothstein |
| 3 | September 29, 2009 | Email sent from srothstein@rra-law.com to Clients 1 and 2 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT 4**
**FRAUDULENT INVESTMENT SCHEME**
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

1. The General Allegations of this Indictment are realleged and expressly incorporated herein as if set forth in full.

2. An attorney at RRA (hereinafter referred to as "Shareholder 1") was a person who was designated as a shareholder at RRA but who had no equity interest in the law firm.

3. From in or about March 2009 through in or about October 2009, in Broward County in the Southern District of Florida and elsewhere, the defendant,

DOUGLAS L. BATES,

did knowingly and willfully combine, conspire, confederate, and agree with Rothstein and with other persons known and unknown to the grand jury to commit an offense against the United States of America, that is, to devise and intend to devise a scheme and artifice to defraud and for obtaining

5

money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing, and attempting to execute, such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, to knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain signs, writings, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

The Purpose and Object of the Conspiracy

4.      The purpose and object of the conspiracy was to induce persons to invest in a fraudulent investment scheme, through the use of false and fraudulent pretenses, representations and promises.

Manner and Means of the Conspiracy

**The Fraudulent Investment Scheme**

5.      It was part of the conspiracy that, beginning in or about 2005, Rothstein and other co-conspirators began operating a fraudulent investment scheme.

6.      It was further part of the conspiracy that the potential investors in the fraudulent investment scheme were falsely informed that RRA and firms affiliated with RRA represented potential plaintiffs (hereinafter referred to as "plaintiffs") in sexual harassment, discrimination and/or whistle-blower suits and that settlements of these claims had been negotiated prior to filing law suits.

7.      It was further part of the conspiracy that potential investors were informed that, pursuant to the aforesaid settlement agreements, the terms thereof were to remain confidential.

8.      It was further part of the conspiracy that potential investors were falsely informed that the plaintiffs would accept discounted lump-sum payments, that the investors would fund the lump-sum payments to the plaintiffs, and that, in exchange, potential investors would receive the

installment payments due and owing to the plaintiffs under the terms of the negotiated settlement agreements.

9. It was further part of the conspiracy that the potential investors were falsely informed by Rothstein and other co-conspirators that pools of confidential settlement agreements were available for purchase in amounts ranging from hundreds of thousands of dollars to millions of dollars.

10. It was further part of the conspiracy that potential investors were falsely informed that the amounts due the plaintiffs were paid into trust accounts which were controlled by Rothstein and RRA, and that said funds would only be utilized to pay the potential investors.

11. It was further part of the conspiracy that, in fact, there were no such plaintiffs who had entered into the above-described confidential settlement agreements. Instead, Rothstein would utilize the funds obtained from potential investors to further the fraudulent scheme by (a) paying prior investors in the scheme; (b) supplementing and supporting the operation and activities of RRA; (c) distributing lavish gifts, including exotic automobiles, jewelry, boats, loans, cash and bonuses, to individuals and members of RRA in order to engender goodwill and loyalty and to create the appearance of a successful law firm; (d) making large charitable contributions to public and private charitable institutions, including hospitals and other legitimate charitable and nonprofit organizations, in order to deflect any negative scrutiny by the public and/or law enforcement agencies and to create the public impression of altruism and commitment to the community; and (e) creating the appearance of affluence and wealth, by purchasing expensive real and personal property, in order to convince potential investors of the legitimacy of RRA and of the purported investment opportunities.

12. It was further part of the conspiracy that, at different times, Rothstein would utilize co-conspirators to assist him in carrying out various aspects of the fraudulent investment scheme, including attorneys from outside of RRA.

**Fraudulent Referral Sources**

13. In or about December 2008, a representative of an investment group which had invested in the fraudulent investment scheme (hereinafter referred to as "Representative 1") traveled from New York to the Southern District of Florida for the purpose of conducting due diligence into the investments being offered by Rothstein.

14. As part of that due diligence, Representative 1 sought to verify the number of plaintiffs purportedly being referred by other law firms in South Florida to RRA.

15. It was part of the conspiracy that Rothstein took Representative 1 to several law firms where persons associated with those law firms falsely stated to Representative 1 that those law firms were referring numerous cases to RRA when, in fact, they were not.

16. It was further part of the conspiracy that Shareholder 1 arranged with defendant BATES to have a lawyer at Koppel & Bates meet with Representative 1 and falsely verify to Representative 1 that Koppel & Bates had referred numerous cases to RRA over an extended period of time.

17. It was further part of the conspiracy that defendant BATES solicited an attorney at Koppel & Bates to meet with Representative 1 and falsely verify to Representative 1 that Koppel & Bates had referred numerous cases to RRA over an extended period of time.

18. It was further part of the conspiracy that, on December 29, 2008, Rothstein took Representative 1 to meet with the attorney at Koppel & Bates, where Representative 1 was falsely informed that Koppel & Bates had referred numerous cases to RRA over an extended period of time.

19. Based in part upon the aforesaid false and fraudulent representations made by the attorney from Koppel & Bates set forth above, the investment group, of which Representative 1 was a part, continued to invest more than $140 million in additional funds into the fraudulent investment scheme, which funds were transmitted by wire in interstate commerce.

## Fraudulent Attorney Letters

20. It was further part of the conspiracy that, at the request of potential investors, Rothstein had agreed to provide to the investors certain opinion letters from attorneys who purportedly were unaffiliated with Rothstein or RRA.

21. It was further part of the conspiracy that, in or about March 2009, Rothstein asked defendant BATES to prepare an attorney opinion letter (hereinafter referred to as "Bates Opinion Letter 1") regarding the asserted legitimacy of the purported confidential settlement agreements.

22. It was further part of the conspiracy that, in or about March 2009, defendant BATES agreed to fraudulently place the contents of Bates Opinion Letter 1, which had been drafted by Rothstein, on the letterhead of Koppel & Bates.

23. It was further part of the conspiracy that Bates Opinion Letter 1 falsely stated that defendant BATES was legal counsel representing an investment group which had a business plan to invest in the confidential settlements which formed the basis for the fraudulent investment scheme.

24. It was further part of the conspiracy that Bates Opinion Letter 1 falsely stated that defendant BATES had reviewed the settlement documents and that the transactions set forth therein were legal and enforceable.

25. It was further a part of the conspiracy that, in or about March 2009, Rothstein forwarded Bates Opinion Letter 1 via e-mail, which was transmitted in interstate commerce, to a

representative of an investment group in order to induce the investment group to invest in the fraudulent investment scheme.

26. It was further a part of the conspiracy that, in or about March 2009, when defendant BATES knowingly caused Bates Opinion Letter 1 to be drafted, signed the opinion letter and caused it to be sent to Rothstein, defendant BATES well knew and understood that he did not represent any such investment group and that he had not reviewed the aforesaid settlement documents.

27. It was further part of the conspiracy that, in or about August 2009, Rothstein asked defendant BATES to prepare another attorney letter (hereinafter referred to as "Bates Opinion Letter 2").

28. It was further part of the conspiracy that, in or about August 2009, defendant BATES agreed to fraudulently place the contents of Bates Opinion Letter 2, which had been drafted by Rothstein, on the letterhead of Koppel & Bates.

29. It was further part of the conspiracy that Bates Opinion Letter 2 falsely stated that defendant BATES was legal counsel representing a plaintiff who had entered into a confidential settlement agreement, and that defendant BATES had reviewed the settlement documents and sale and transfer agreement under which his purported client assigned rights to the investor in order to receive the settlement payments.

30. It was further part of the conspiracy that Bates Opinion Letter 2 falsely stated, among other false statements, that the settlement documents pertaining to the confidential settlement agreement had been executed and delivered by the plaintiff.

31. It was further part of the conspiracy that, in or about August 2009, Rothstein sent defendant BATES a draft of Bates Opinion Letter 2 for defendant BATES to review and sign.

32.  It was further a part of the conspiracy that, in or about August 2009, when defendant BATES knowingly caused Bates Opinion Letter 2 to be drafted, signed the opinion letter and caused it to be sent to Rothstein, defendant BATES well knew and understood that he did not represent any such plaintiff and had not reviewed any such settlement agreements.

33.  It was further a part of the conspiracy that, in or about August 2009, Rothstein forwarded Bates Opinion Letter 2 via e-mail, which was transmitted in interstate commerce, to a potential investor in order to fraudulently induce the investor to invest in the fraudulent investment.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
### (18 U.S.C. § 981(a)(1)(C))

1.  The allegations of this Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of property in which the defendant has an interest pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure.

2.  Upon conviction of any violation of Title 18, United States Code, Section 1343 or 1349, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the violation. The property subject to forfeiture includes, but is not limited to, the entry of a forfeiture money judgment in a sum representing the proceeds derived from the charged offense.

3.  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,

   (1)  cannot be located upon the exercise of due diligence;
   (2)  has been transferred or sold to, or deposited with a third person;
   (3)  has been placed beyond the jurisdiction of the Court;
   (4)  has been substantially diminished in value; or

11

  (5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property and, in addition, to require the defendant to return any such property to the jurisdiction of the court for seizure and forfeiture. The property subject to forfeiture includes, but is not limited to, the following: real property located at 11938 NW 82nd Street, Parkland, Florida 33076-3401.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), as made applicable by Title 28, United States Code, Section 2461, and the procedures outlined at Title 21, United States Code, Section 853.

            A TRUE BILL

            _____
            FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

_____
PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

_____
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

DOUGLAS BATES,

                Defendants.
_____/

CASE NO.

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)

___ Miami    ___ Key West
_√_ FTL    ___ WPB    ___ FTP

New Defendant(s)    Yes ___    No ___
Number of New Defendants ___
Total number of counts ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    _NO_
   List language and/or dialect

4. This case will take _5_ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)          (Check only one)

   I    0 to 5 days    _√_      Petty    ___
   II    6 to 10 days    ___      Minor    ___
   III    11 to 20 days    ___      Misdem.    ___
   IV    21 to 60 days    ___      Felony    _√_
   V    61 days and over    ___

6. Has this case been previously filed in this District Court? (Yes or No) _No_
   If yes:
   Judge: _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) _No_
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No) _No_

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes _√_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ___ Yes _√_ No

                                 _____
                                 Lawrence D. LaVecchio
                                 ASSISTANT UNITED STATES ATTORNEY
                                 Florida Bar No./Court No. 0305405

*Penalty Sheet(s) attached                                                     REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** <u>**DOUGLAS BATES**</u>

**Case No:**_____

**Counts #: 1-3**          18 U.S.C. § 1343; Wire fraud;

**\* Max.Penalty:**          20 years' imprisonment.

**Count #: 4**          18 U.S.C. § 1349; Conspiracy to commit wire fraud;

**\* Max.Penalty:**          20 years' imprisonment.